On October 11, 1946, the Governor of Louisiana, acting as he was authorized to do, by virtue of the provisions of Act No. 192 of 1946 which had created the Louisiana Milk Commission, appointed as members, Charles M. Rhodes, Thomas J. Jenniskens, J. Wayland Smith, H.L. Guth, and C.R. Wilson. With other appointees, the Commission met on December 18, 1946, for the purpose of organization. At that meeting the members caused warrants to be issued to themselves in order to defray per diem allowances and mileage expenses and these were paid from out of the appropriation made by the Legislature for the Louisiana Milk Commission by the general appropriation Act of 1946, being Act No. 66 *Page 644 
of that year. The plaintiffs in this case who are residents, taxpayers and dairy farmers of the Parish of Tangipahoa, claiming that the Commissioners just named did not have the proper qualifications to serve as members on the Commission, instituted this suit seeking an injunction to restrain them from taking part in any further meetings of the commission and also to enjoin the Director of Finance of the State of Louisiana, James S. Reiley, from issuing any warrants or vouchers or other orders for withdrawal of funds from the State Treasury in their favor.
The grounds on which the qualifications of these appointed members are challenged are the following: Charles M. Rhodes, on the ground that he was appointed from the First Congressional District of Louisiana under the provisions of the act, when in fact he was not a resident of that Congressional District and besides was not engaged in the actual production of milk nor was he a distributor as he was engaged in the milk business only to the extent that he was an officer and manager of the Cloverland Dairy Products of New Orleans, a corporation, and therefore he could not serve as an individual on the commission; Thomas J. Jenniskens on the ground that he was not actually engaged in the production of milk and moreover that he had failed to qualify by not taking the necessary oath of office when his commission was issued to him; J. Wayland Smith and H.L. Guth, on the ground that they were not engaged in the actual production of milk as contemplated under the statute creating the commission and C.R. Wilson, on the same ground and in addition that he also was not individually engaged in the milk business at all as he was the manager of the Blue Ribbon Dairy of Alexandria, Louisiana, whose business is owned and controlled by the corporation known as the Louisiana Ice and Utilities Company, Inc.
All the defendants filed exceptions of no right or cause of action which were overruled by the trial judge. The exceptions are not urged either in argument or in brief before this court and therefore do not have to be considered.
The defense to the rule for injunction is based on the ground that all of these appointees were qualified to serve as commissioners under the act, each having the necessary qualifications prescribed under their respective appointments. After trial of the rule for injunction the district judge, in a written opinion, dismissed the same, and refused to grant the injunction. Counsel for the plaintiffs served notice at the time that he would apply for writs to the Supreme Court but later abandoned this procedure and filed a supplemental petition which does not seem to have added more to the issues that had been presented in the pleadings before. The defendants then put the case at issue on the merits and the matter was submitted to the trial judge on the testimony which had been taken on trial of the rule for injunction. The trial judge again wrote a lengthy opinion in which he held that the appointee Rhodes could not serve on the commission in as he had been appointed a commissioner from a Congressional District of which he was not a resident, that the appointee Smith was ineligible because he was not engaged in the actual production of milk as required under the statute and that Wilson who had been appointed as a producer of milk could not serve because he was not engaged in the actual production of milk, his only connection with the production end having been as manager of the Blue Ribbon Dairy which, at the time of his appointment, no longer owned a dairy and had ceased operations as a producer of milk. He refused to recognize his appointment as a distributor of milk in place of Rhodes whose appointment as such he had voided, as he had been urged to do, for two reasons: First, he held that even though he might well have served as a distributor as an official or representative of the Louisiana Ice and Utilities Co., Inc., his relationship to that corporation had not been shown and second, as the Governor had specifically appointed him as a producer, clearly it was not his intention to have him serve as a distributor of milk. He upheld the appointments of Jenniskens and Guth and rendered judgment accordingly. From that judgment plaintiffs have appealed maintaining that all of these appointees are disqualified and have been shown so to be under the testimony adduced in the record. *Page 645 
The statute in question is entitled "An act to create the Louisiana Milk Commission and granting to same the power to regulate the buying or receiving of milk or cream on the basis of butterfat contents thereof, regulating testing, sampling and weighing of same, to require licenses for testing milk or cream, to adopt rules and regulations to regulate methods of testing, sampling or weighing of milk or cream and providing penalties for the violation of this Act." The first section of the Act provides for the creation of the Milk Commission which by the terms of that Section is to be composed of the following: "Commissioner of Agriculture and Immigration; the head of the Dairy Department at Louisiana State University and Agricultural and Mechanical College; and nine members to be appointed by the Governor, one from each of the Congressional Districts of the State, seven (7) of these members are to be men engaged in the actual production of milk, and one (1) a distributor of milk, and one member to be appointed at large, who must be engaged in the actual production of milk." With regard to the appointments which are attacked in this proceeding we are interested only in those members who were appointed by the Governor and the direct question at issue is whether seven of these men who were appointed from the Congressional Districts are men engaged in the actual production of milk and whether the one appointed at large is also thus engaged. The other of the nine has to be a distributor of milk.
The appointment of Charles M. Rhodes as a distributor of milk which had been attacked on two grounds, one of which only was sustained by the trial judge, is no longer at issue as it seems to be conceded that his appointment from the First Congressional District cannot stand in view of the fact tht he is a resident of the Second Congressional District. The trial judge held that otherwise he might have served as a distributor of milk even though in his capacity as such he was merely an official of a corporation. It is unnecessary to discuss this phase of his lack of qualifications for, as we have just stated it is conceded by the defendants that he is ineligible on the other ground on which his appointment was vitiated.
[1] With regard to Thomas J. Jenniskens who was appointed as a producer from the Second Congressional District, the testimony shows that this appointee failed to qualify by not taking the oath prescribed for public officials when he received his first commission from the Governor. It is not disputed that he did not take the oath and that he at that time was not qualified to serve. He attended the meeting of December 18, 1946, under that first commission and even though legally he would have had no right to take part in the meeting, his status was not questioned at that time and it may be that for the purposes of that meeting and the action taken by him he may have been considered a defacto officer. Immediately thereafter it was discovered that he had not taken the oath and a new commission was issued by the Governor under which he qualified at once by taking the necessary oath. That, in our opinion, had the effect of making him a de jure member from the time he so qualified. At the time of the trial of this case he was so qualified and we do not see how his appointment could now be set aside on that ground.
[2] With regard to the other ground of attack against his appointment as well as against that of H.L. Guth as a member from the Seventh Congressional District, we cannot agree with the contention of counsel for plaintiffs that these men are not engaged, and were not engaged at the time suit was filed, in the actual production of milk.
It is not disputed that Jenniskens is the owner of a herd of cows and that he operated, in his own individual name, the dairy at Hope Haven in the Parish of Jefferson. Hope Haven is an orphanage conducted under the auspices of the Archdiocese of the Roman Catholic Church of New Orleans. For a time the herd of dairy cattle was owned by the Archdiocese and Mr. Jenniskens was merely the manager of the dairy. However a considerable length of time before his appointment on the Commission, he bought the herd and owned it personally. He then entered into *Page 646 
a contract of lease with the Archdiocese of New Orleans for the barn and other property used in connection with the dairy. He milks this herd of cattle and sells the milk to customers by volume.
The appointee Guth is also shown to be the owner of a herd of cows which he owned at the time of his appointment and when the case was tried it was shown that he was actually milking 146 head. He also sold the milk to customers in his vicinity and some as far as the city of Monroe, all by volume.
One of the contentions made against these gentlemen is that whilst they sold milk and might be said to be engaged in the actual production of milk they still did not qualify because they did not sell their milk "on the basis of butterfat content." We are unable to follow counsel for plaintiffs in that contention for the reason that whilst the statute was enacted for the purpose of creating a milk commission and of granting to that commission the power "to regulate thebuying or receiving of milk or cream on the basis of butterfat content," yet, as shown by Section 1 of the Act prescribing the qualifications of members who are to serve on the commission, that has absolutely nothing to do with their qualifications. All that is required of them is that "[they] be men engaged in the actual production" of milk, as far as eight of them are concerned and the other has to be a distributor of milk. It is true that if they become members of the commission charged with the duty of carrying out the provisions of the act, they have the power to regulate the buying or receiving of milk or cream on the basis of butterfat content, still it is not necessary that in their respective businesses as men engaged in the actual production of milk that they sell their milk on that basis. In other words it is not intended by the wording of the act for a member of the commission to be able to regulate thebuying or receiving of milk on a basis of a butterfat content that he operate his business of selling milk on that same basis. (All italics ours.) This commission is appointed for the purpose of supervising and regulating the buying of milk, of establishing certain methods of testing and sampling and weighing the same, of requiring licenses for such purposes, and in fact, to act in an administrative and advisory capacity for the milk industry of the state and the qualifications which they must possess are not that exacting that one who sells his milk by volume rather than on a basis of butterfat content, cannot serve as a member.
Counsel for plaintiffs produced as a witness, Mr. M.M. Truxillo, administrator of certain federal orders issued by the Secretary of Agriculture regulating the handling of milk in the New Orleans area in the State of Louisiana, in order to have him define the term producer as applied by the United States Department of Agriculture, in the particular regulation he has charge of. The term was defined by the witness as follows: "A producer is a person who in conformity with the applicable health regulations for milk for consumption as milk in the marketing area produces milk which is received at a city or country plant." In interpreting that definition the witness stated: "As I understand it, a person who produces milk which moves through a pasteurization plant, you want to know whether that person would be a producer under this regulation. He would be a producer." Asked further if he would be a producer whether he sold milk by butter fat content or retail, he answers: "That is right. I should explain that to you. In the New Orleans area quite a bit of milk is sold to handlers by producers on the basis of volume only." Instead of fortifying the contention of counsel for plaintiffs therefore, it would seem to us that this testimony had just the opposite effect.
There were introduced in the evidence also several bulletins of the United States Department of Agriculture containing various definitions of the term producer but if any federal government bulletin is to be given particular consideration in reaching a proper definition it should be Bulletin No. 220 of the United States Public Health Service which by the very terms of Act No. 192 of 1946, the statute we are interpreting, is acknowledged as the standard milk regulation. See Section 11 of that Act. In the bulletin referred to, a milk producer is defined as being "any person who owns or controls one or more cows, a part of all of the milk or milk products from which *Page 647 
is sold or offered for sale." There is nothing there to suggest that the milk or its products is to be sold on the basis of butter fat content.
We fully agree with the district judge therefore as far as the appointees Jenniskens and Guth are concerned, they are qualified to act as members on the Commission.
[3,4] We come now to attack made on the appointment of C.R. Wilson. Mr. Wilson himself did not testify in the case but we find the evidence to be that he does not own a dairy individually and that his connection with the milk industry was restricted to that of manager of the Blue Ribbon Dairy at Alexandria which is owned by the Louisiana Ice and Utilities Co., Inc. The trial judge in discussing the qualifications of the appointee, Rhodes, seems to have been of the opinion that the fact that he acted merely in the capacity of the executive officer of a corporation did not of itself disqualify him. We are inclined to disagree with him on this proposition as it is an undisputed point in the law of corporations that the corporation itself is a separate and distinct entity from individuals who compose it. It may be true, as stated by him, that the greater part of the distribution of milk in Louisiana today is done by large corporations but still that does not have any effect on the wording of the statute with which we are concerned and which provides that those members appointed by the Governor "are to be men engaged in the actual production of milk" as far as eight of them are concerned and one has to be a distributor of milk. We cannot read into the law that a representative of a corporation engaged in the distribution of milk is a man so engaged. For that reason we find that we cannot give any consideration to the argument of counsel for the defendants that in view of the disqualifications of the appointee, Rhodes, who had been appointed as a distributor, the appointment of Wilson even though he be disqualified as a producer, could be upheld as that of a distributor in Rhodes' place.
[5] Lastly we come to the attack on the appointment of J. Wayland Smith. This appointee it seems at one time owned a herd of cattle but at the time of his appointment his herd had been reduced by sickness and death among his cattle to a few heifers which were not yet in the milking stage. He testified that he was rebuilding his herd and that although he was not milking any cows at the time, some of these heifers had even then been freshened and as soon as they would be producers he was going to resume his business of selling milk as he had done before his herd was destroyed.
Speaking in a broad sense it might reasonably be stated that under the particular circumstances of his case, Mr. Smith was a producer of milk but in view of the wording of the statute which is specific and which provides that seven of the members appointed by the Governor "are to be men engaged in the actual production of milk" which we take to mean they must be so engaged at the time of their appointment, we find no alternative but to follow the language used and the intention expressed and hold with the district judge that the appointee was not qualified and has no right to serve as a member on the Commission.
For the reason stated, the judgment appealed from is hereby affirmed.